1  ANTHONY J. ORSHANSKY (SBN 199364)
   anthony@counselonegroup.com
2  JUSTIN KACHADOORIAN (SBN 260356)
   justin@counselonegroup.com
3  **COUNSELONE, PC**
   9301 Wilshire Boulevard, Suite 650
4  Beverly Hills, California 90210
   Telephone: (310) 277-9945
5  Facsimile:  (424) 277-3727

6  Attorneys for Plaintiff,
   BRYAN A. RODRIGUEZ

7

8

9

10                 **UNITED STATES DISTRICT COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12                        **WESTERN DIVISION**

13

14  BRYAN A. RODRIGUEZ, on behalf of      Case No. 2:20-cv-07589-GW-PLA
    himself and others similarly situated,   Hon. George H. Wu
15
                                            **NOTICE OF MOTION AND**
16            Plaintiff,                     **PLAINTIFF'S MOTION FOR**
                                            **FINAL APPROVAL OF CLASS**
17       v.                                  **AND REPRESENTATIVE**
                                            **SETTLEMENT**
18
    G2 SECURE STAFF, L.L.C., a Texas        [MEMORANDUM OF POINTS AND
19  limited liability company; and DOES 1   AUTHORITIES, DECLARATIONS
    through 100,                            OF ANTHONY J. ORSHANSKY,
20                                          BRYAN A. RODRIGUEZ, AND
                                            ABEL E. MORALES, AND
21            Defendant.                     PROPOSED FINAL APPROVAL
                                            ORDER AND JUDGMENT
22                                          SUBMITTED CONCURRENTLY
                                            HEREWITH]
23
                                            Date:      November 17, 2022
24                                          Time:      8:30 a.m.
                                            Crtrm:     9D (1st St. Courthouse)
25

26

27

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL**
**APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     SUMMARY OF THE SETTLEMENT .............................................................. 1

III.    THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY
        ADHERED TO ................................................................................................... 2

        A.      Dissemination of the Notice of Settlement ............................................ 2

        B.      No Objections and Only Five Requests for Exclusion ........................... 3

IV.     DISCUSSION .................................................................................................... 3

        A.      The Settlement Meets the Standards Governing Final Approval ........... 3

        B.      The Settlement Is Fair ........................................................................... 5

                1.      Sufficient Discovery and Investigation Has Occurred ............... 10

                2.      Class Counsel Are Experienced ................................................. 10

                3.      Class Members' Response to the Settlement Is Further
                        Evidence That the Settlement Is Fair and Reasonable ............... 10

        C.      The Court Should Approve of the Settlement Administration Fee ...... 11

V.      CONCLUSION ................................................................................................ 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bluetooth Headset Products Liability Litigation*,
 654 F.3d 935 (9th Cir. 2011) ............................................................................... 4, 5

*Brewer v. Gen. Nutrition Corp.*,
 No. 11-CV-3587-YGR, 2015 WL 5072039 (N.D. Cal. Aug. 27, 2015) ............... 8

*Class Plaintiffs v. Seattle*,
 955 F.2d 1268 (9th Cir. 1992) .................................................................................. 3

*Eisen v. Porsche Cars North America, Inc.*,
 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ............................................................ 9

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................................................... 3, 4, 6

*In re Heritage Bond Litigation*,
 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ....................................... 3

*Joel A. v. Giuliani*,
 218 F.3d 132 (2d Cir. 2000) ..................................................................................... 3

*Lane v. Facebook, Inc.*,
 2010 WL 9013059 (N.D. Cal. March 17, 2010) ...................................................... 9

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998) .................................................................................. 6

*Mandujano v. Basic Vegetable Products, Inc.*,
 541 F.2d 832 (9th Cir. 1976) .................................................................................. 10

*Marshall v. Holiday Magic, Inc.*,
 550 F.2d 1173 (9th Cir. 1977) .................................................................................. 5

*Morey v. Louis Vuitton N. Am., Inc.*,
 2014 WL 109194 (S.D. Cal. Jan. 9, 2014) .............................................................. 9

*In re MRV Communs., Inc. Derivative Litig.*,
 2013 WL 2897874 (C.D. Cal. June 6, 2013) ........................................................... 9

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) .................................................................................... 6

ii

*In re Surebeam Corp. Secs. Litig.*,
    2004 WL 5159061 (S.D. Cal. 2004) ..................................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
    *& Prods. Liab. Litig.*,
    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ......................... 9

*Van Ba Ma v. Covidien Holding, Inc.*,
    2014 U.S. Dist. LEXIS 76359 (C.D. Cal. 2014) ................................. 5, 6

*Viking River Cruises, Inc. v. Moriana*,
    213 L. Ed. 2d 179 (June 15, 2022) ...................................................... 7

**Statutes**

45 U.S.C. § 151 ................................................................................................ 7

45 U.S.C. § 181 ................................................................................................ 7

45 U.S.C. § 182 ................................................................................................ 7

California Labor Code § 514 ........................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ................................................................................. 10

Fed. R. Civ. P. 23(e) ................................................................................... 3, 4

Newberg on Class Actions, § 11.41 (4th Ed. 2013) ...................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Bryan A. Rodriquez (hereinafter referred to as "Plaintiff") respectfully submits this Memorandum in support of his Motion for Final Approval of the Class and Representative Action Settlement on behalf of current and former employees of Defendant G2 Secure Staff, L.L.C. ("Defendant").

## I.   INTRODUCTION

This motion seeks final approval of a $555,000 proposed class and representative action settlement. Effective July 8, 2022, the Court preliminarily approved the Joint Stipulation of Class and Representative Action Settlement (hereinafter "Stipulation", "Settlement", or "Settlement Agreement")[1] and ordered the dissemination of the Notice of Settlement to Class Members. Dkt. No. 42. In response to the Notice of Settlement, no Class Members have objected to the Settlement and only five have requested exclusion therefrom. Class Members' response supports the Court's finding that the Settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find that the Settlement is fair, reasonable, and adequate.

## II.   SUMMARY OF THE SETTLEMENT

Plaintiff and Defendant have agreed to settle all class claims and representative claims alleged in this action in exchange for the Gross Settlement Amount ("GSA") of $555,000. The GSA includes: (1) settlement payments to Participating Class Members; (2) a requested $185,000 in attorneys' fees and up to $15,000 in litigation costs/expenses to Class Counsel; (3) $50,000 allocated to settle PAGA claims, of which a $37,500 (or 75%) is payable to the LWDA, and $12,500 (or 25%) is payable to PAGA Members; (4) Settlement Administration Costs of $40,000; and (5) a requested Service Payment of $7,500 to Plaintiff. Based on the above, the Net

---

[1] A copy of the fully executed Settlement Agreement is attached to the Declaration of Anthony J. Orshansky ("Orshansky Decl."), filed concurrently herewith, as Exhibit 1.

1

Settlement Amount ("NSA") is estimated to be $270,000. Defendant's share of payroll taxes on all settlement payments allocated as wages shall be paid by Defendant *in addition* to the GSA.

Subject to the Court approving attorneys' fees and costs, the payment to the LWDA, Settlement Administration Costs, and Plaintiff's Service Payment, the NSA will be distributed to all Participating Class Members, and will be apportioned among Settlement Class Members based on whether the Settlement Class Member qualifies as a PAGA Member in addition to being a Class Member. Declaration of Anthony J. Orshansky ("Orshansky Decl."), Exhibit 1 (Settlement Agreement) ¶¶ 6.6.1-6.6.5. Because the GSA is non-reversionary, 100% of the NSA will be paid to Participating Class Members without the need to a submit a claim for payment. *Id*. at ¶ 2.16.

As will be discussed, the Settlement has been a success, with no objections to the Settlement submitted by Class Members and only five requests for exclusion. This favorable response from Class Members affirms the Settlement is fair, reasonable, and adequate.

## III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

### A. Dissemination of the Notice of Settlement

Preliminary Approval was granted, effective July 8, 2022. At that time, CPT Group, Inc. ("CPT") was appointed by the Court as the Settlement Administrator. CPT has complied with the Court's orders concerning dissemination of the Notice of Settlement by first-class regular U.S. Mail. On July 29, 2022, counsel for Defendant provided CPT with the mailing list ("Class Data") containing Class Members' full names, Social Security numbers, last known addresses of each Class Member, and each Class Member's dates of employment with Defendant. Declaration of Abel E. Morales ("Morales Decl.") ¶ 6. The Class Data contained information for approximately 9,553 Class Members. *Id*. at ¶¶ 10, 12. The mailing addresses contained in the Class Data were processed and updated utilizing the National Change

2

of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id*. at ¶ 7. The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id*. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice of Settlement. *Id*. CPT was able to locate 1,141 updated addresses through the NCOA search. *Id*.

As a result of either a skip trace, request from counsel or the Class Member, a total of 457 Notices of Settlement have been re-mailed to date. Morales Decl. ¶ 9. Additionally, 60 Notices of Settlement were forwarded to new addresses by the U.S. Post Office. *Id*.

### B.    No Objections and Only Five Requests for Exclusion

The deadline to submit objections or requests for exclusion was October 17, 2022. Morales Decl. ¶ 8. No Class Members have objected to the Settlement, and only five Class Members have opted out. Therefore, almost all Class Members will receive a Settlement Payment. *Id*. at ¶¶ 10, 11.

## IV.    DISCUSSION

### A.    The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. P. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

3

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures and wage and hour policies. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to the certifying Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

## 1. *In re Bluetooth Headset Products Liability Litigation* Factors Are Not Present Here

In *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011), the Ninth Circuit articulated factors that need to be considered, especially where a settlement has been reached prior to formal class certification. As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under FRCP 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1.   When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;

4

2.     When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by Defendants; and

3.     When the parties arrange for fees not awarded to revert to Defendants rather than be added to the class fund.

*Bluetooth*, 654 F.3d at 947 (citations omitted).

This Settlement passes the *Bluetooth* test. This Settlement was not driven by attorneys' fees, and Class Counsel are not receiving a disproportionate distribution of the Settlement. The NSA is almost 1.5 times greater than the fees requested by Class Counsel who are requesting $185,000 (33⅓% of the GSA); the NSA is approximately $270,000. The remainder will necessarily revert to the Class. Additionally, although the Settlement states that Defendant will not object to attorneys' fees up to 33⅓% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members and PAGA Members. Further, 100% of the NSA will be paid out to Participating Class Members and PAGA Members as there is no reversion to Defendant. Accordingly, unlike the settlement agreement in *Bluetooth*, the instant settlement cannot be said to arouse suspicion of collusion.

## B.    The Settlement Is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, at *6-7 (C.D. Cal. 2014) (citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal

1  for trial on the merits." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of*
2  *the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

3       There is no standard or benchmark for determining whether a settlement is
4  fair. "Ultimately the district court's determination is nothing more than 'an
5  amalgam of delicate balancing, gross approximations and rough justice.'" *Officers*
6  *for Justice*, 688 F.2d at 625. A court should weigh the benefits that the settlement
7  will realize for the class against the uncertainty of litigation and the possibility
8  that the class members would obtain no relief in the absence of a settlement. *See*
9  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the
10  very uncertainty of outcome in litigation and avoidance of wasteful and expensive
11  litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026
12  (when considering the fairness of a proposed class settlement, courts consider the
13  strength of a plaintiff's case against the risk, expense, complexity, and likely
14  duration of further litigation.).

15       Throughout this litigation Defendant advanced a number of defenses that
16  militated in favor of reaching the instant Settlement. Defendant indicated that it
17  intended to vigorously contest the forum of this litigation, class certification,
18  PAGA manageability, and Plaintiff's claims on the merits. While Plaintiff does
19  not agree with Defendant's arguments regarding arbitration, class certification,
20  PAGA manageability, or Defendant's defenses on the merits to Plaintiff's claims,
21  Plaintiff recognizes that there is a risk that the Court and/or a jury will agree with
22  Defendant, and thus, limit or eliminate Class Members' ability to recover on the
23  claims at issue.

24       With respect to all of Plaintiff's claims, Defendant contended that an
25  arbitration agreement required arbitration of Plaintiff's individual claims and
26  dismissal of Plaintiff's class and representative claims.[2] Defendant also argued

27  ───────────────────

28  [2] After the Parties reached a settlement, the United States Supreme Court held that
the Federal Arbitration Act (FAA) preempted California law prohibiting

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

that Plaintiff's claims are preempted by the Railway Labor Act, which provides for mandatory arbitration of certain labor disputes between parties to a Collective Bargaining Agreement—which exists here between Defendant and its nonexempt employees, including Plaintiff—and applies to any "company which is directly or indirectly owned or controlled by or under common control with any carrier… and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit… and handling of property transported by railroad." 45 U.S.C. §§ 151, 181-182.

Defendant also advanced arguments as to the merits of Plaintiff's meal and rest period claims. With respect to Plaintiff's meal period claim, Defendant maintained a timekeeping system that asked employees to select whether their short, late, or unrecorded meal periods were the result of their own choice or Defendant's conduct, and that paid meal period premiums whenever the employee selected that a potential issue was due to Defendant's conduct. Employees were also permitted to separately report any alleged meal break violations to their supervisors or human resources. With respect to Plaintiff's rest period claim, Defendant argued that as a practice, it has always permitted Class Members to leave their work area during rest periods, and had even issued a memorandum to all California employees dated October 9, 2019 stating, among other things, that "Consistent with what has always been allowed, employees are permitted to leave their work area during their off-duty rest periods, and go to any public area in the terminal, sit in the break room, or anywhere else they wish within the limitations of a 15-minute rest period."

With respect to Plaintiff's claim for overtime, Defendant argued that this claim is subject to the collective bargaining agreement exemption pursuant to

representative PAGA waivers in arbitration agreements. *See Viking River Cruises, Inc. v. Moriana*, 213 L. Ed. 2d 179 (June 15, 2022).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

California Labor Code section 514. With respect to Plaintiff's wage statement claim, Defendant argued that failure to pay meal and rest period premiums cannot be the basis for a wage statement claim. *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587-YGR, 2015 WL 5072039, at *17-18 (N.D. Cal. Aug. 27, 2015) (discussing split of authority and cataloging cases).

With respect to Plaintiff's claim for reporting-time pay, Defendant contended that it maintained a lawful policy, including pursuant to the language in its handbook instructing for the payment of reporting time pay. Additionally, with respect to Plaintiff's claim for reimbursement of necessary business expenses, Defendant contended that no aspect of Plaintiff's job position or the positions of any PAGA Members required the use of their personal cell phones, as they are given tablets or radios to use during their shifts. Defendant argued that Plaintiff and the PAGA Members did not incur any other reasonable and necessary business expenses, but that even if they had, they had the opportunity to request reimbursement of any such expenses. And with respect to Plaintiff's derivative claim for waiting time penalties, Defendant contended that any failure to pay final wages was not willful.

Finally, Plaintiff's PAGA claims are based on the same alleged unlawful conduct as their class claims. If the PAGA claim was not compelled to individual arbitration, PAGA penalties could only be awarded if the factfinder agreed with Plaintiff's theories of liability. Should the Court agree with any of Defendant's defenses, the potential exposure for penalties under the PAGA would be reduced, as penalties can only be awarded if the Court agrees with Plaintiff's underlying allegations. Further, Defendant contended these penalties would be duplicative of the recovery from the underlying violations.

Although Plaintiff remains confident in the strength of his claims and believes this case is suitable for certification on the claimed basis there are company-wide policies that Plaintiff contends violate California law and

8

uniformly affect all non-exempt employees, Defendant's counterarguments raise uncertainties with respect to both class certification and success on the merits. This Settlement represents a well-crafted compromise of the divergent positions of the Parties that provides substantial benefits for the Class. Each side evaluated the strengths and weaknesses of the case and independently concluded that this Settlement represents a responsible means of addressing Plaintiff's claims and Defendant's defenses.

Another factor considered by some courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, at *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013). In applying this factor, a court should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 WL 9013059, at *5 (N.D. Cal. March 17, 2010). Here, litigating the case through to trial would have been expensive, required numerous hours of work, involved substantial risk, and would not have been fully resolved for years. In contrast, the proposed Settlement provides significant and certain compensation that is available now as opposed to potentially and hypothetically sometime in the distant future.

Finally, employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. The alternative to a class settlement—*i.e.*, individual litigation—would tax private and judicial resources over a period of years. As such, the Settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the Settlement. *Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006, at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at

9

*253-54 (C.D. Cal. July 24, 2013); Newberg on Class Actions, § 11.41 (4th Ed. 2013) at 87-89.

### 1.    Sufficient Discovery and Investigation Has Occurred

The Parties engaged in substantial discovery and analysis of the underlying merits of Plaintiff's claims, potential damages, and possible certification. Defendant produced documents, including Defendant's employment policies and procedures relating to the recording of time, meal periods, rest periods, expense reimbursements, overtime, and attendance; Plaintiff's time records; Plaintiff's pay records, including wage statements; and a sampling of Class Members' time records and wage statements. After Plaintiff's counsel performed a lengthy and time-consuming examination of the records, which included engaging an expert to analyze Defendant's records and data, the results of the examination were used to produce a damages model utilized for mediation. Orshansky Decl. ¶ 15.

### 2.    Class Counsel Are Experienced

Class Counsel have and will continue to "fairly and adequately protect the interests of the class." FRCP 23(a)(4). The adequacy requirement requires "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, at *5 (S.D. Cal. 2004). In this case, Class Counsel meet this standard and have been appointed class counsel in numerous class actions. Orshansky Decl. ¶¶ 12-14.

### 3.    Class Members' Response to the Settlement Is Further Evidence That the Settlement Is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). To date, not a single Class Member has objected to the Settlement, and only five Class Members have requested exclusion from the Settlement. Morales

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

Decl. ¶¶ 10, 11. The absence of objections and paucity of requests for exclusion evidence the Class Members' endorsement of this non-reversionary settlement.

### C.     The Court Should Approve of the Settlement Administration Fee

The Parties agreed to retain CPT to serve as the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. CPT was responsible for mailing the Notices of Settlement to Class Members, obtaining better addresses for undeliverable Notices of Settlement, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Morales Decl., *passim*. Following the grant of final approval, CPT will calculate the payments to Participating Class Members, calculate the withholding taxes, transmit taxes to the appropriate government agencies, send Settlement Payments to Participating Class Members, distribute other payments ordered by the Court, and perform such other duties as described in the Settlement. CPT's fee of $40,000 for services rendered, and to be rendered, is fair and reasonable and should be granted. *Id.* at ¶ 16.

## V.     CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the Settlement fair, reasonable, and adequate and grant this Final Approval Motion. Plaintiff further requests that the Court enter final judgment.

Dated: October 27, 2022                    **COUNSELONE, P.C.**

By: /s/ Anthony J. Orshansky
    Anthony J. Orshansky
    Justin Kachadoorian
    Attorneys for Plaintiff Bryan A.
    Rodriguez and the Settlement Class
    Members

11