# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 20-7589-GW-PLAx | Date | November 15, 2022 |
|---|---|---|---|
| Title | *Bryan A. Rodriguez v. G2 Secure Staff, L.L.C.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE SETTLEMENT [43] and PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT [44]

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motions set for hearing on November 17, 2022 at 8:30 a.m.

|  | : |
|---|---|
| Initials of Preparer | JG |

**<u>Bryan A. Rodriguez v. G2 Secure Staff, LLC</u>**, Case No. 2:20-cv-07589-GW-(PLAx)
Tentative Ruling on Motions for Final Approval of Class and Representative Action Settlement and Motion for Attorneys' Fees and Costs, and Class Representative Service Payment

Plaintiff Bryan A. Rodriguez ("Plaintiff"), on behalf of himself and a putative class of similarly situated individuals, sued Defendant G2 Secure Staff, LLC ("Defendant") for claims related to Defendant's alleged violations of various provisions of California wage-and-hour law. *See generally* Complaint ("Compl."), Docket No. 1-1. Plaintiff now moves for – and Defendant does not oppose – final approval of the class action settlement. *See* Motion for Final Approval of Class and Representative Action Settlement ("Motion"), Docket No. 43-1.

I.  **Background**

   A.  **Factual Background**

Plaintiff alleges the following: Defendant, a Texas company doing business in California, employed over 6,000 aviation services professionals at 54 airports throughout the country. Compl. ¶¶ 11, 12, 20. Defendant provides a wide range of aviation services, including terminal, security, aircraft appearance, ramp, passenger, cargo, and maintenance services. *Id.* ¶ 20. Plaintiff worked for Defendant as a non-exempt, hourly paid customer service agent in Los Angeles, California until his separation on August 31, 2019. *Id.* During the relevant period, Defendant had a policy of failing to pay overtime wages to Plaintiff and other employees for all overtime hours they worked. *Id.* ¶ 23.

Specifically, Plaintiff alleges that Defendant did not pay Plaintiff and other employees wages for hours that were worked off the clock and work performed during meal periods, and thus Plaintiff and other employees were deprived wages at overtime premium amounts attributable to overtime hours. *Id.* Defendant did not provide Plaintiff and employees with meal periods that complied with California law; for example, first meal breaks were not timely provided, such that Plaintiff and employees had to work for over five hours without receiving a meal break. *Id.* ¶ 27. Moreover, meal breaks were less than 30 minutes because Plaintiff and employees had to go through security after clocking out for lunch, which cut into the allotted lunch time. *Id.* Plaintiff and employees were consistently deprived of second meal breaks altogether. *Id.* Additionally, Defendant regularly failed to provide Plaintiff and employees with timely duty-free rest breaks and did not compensate Plaintiff and employees with pay when these rest breaks were not provided. *Id.* ¶ 28. Generally, due to Defendant's non-compliant policies, Plaintiff and employees

1

who have since concluded their employment with Defendant were not compensated for all straight-time and overtime hours worked, were not paid all meal and rest break premiums owed, were not provided reporting-time pay, and were not reimbursed for necessary business expenses. *Id.* ¶ 33.

### B. Procedural Background

On July 27, 2020, Plaintiff filed the instant suit in California state court. *See generally id.* The Complaint alleged the following causes of action on behalf of himself and Defendant's non-exempt California employees: (1) failure to pay minimum wages; (2) failure to pay all overtime wages; (3) meal period liability under Labor Code § 226.7; (4) rest break liability under Labor Code § 226.7; (5) failure to provide reporting-time pay; (6) failure to reimburse business expenses; (7) failure to provide accurate itemized employee wage statements; (8) failure to pay all wages owed timely and upon separation of employment; (9) violation of Labor Code § 1174(d); (10) violation of Business & Professions Code §§ 17200, *et seq.*; and (11) penalties pursuant to Labor Code § 2699. *See generally id.* Plaintiff provided notice to the California Labor & Workforce Development Agency ("LWDA") of the violations described in the Complaint, pursuant to the Labor Code Private Attorneys General Act ("PAGA"). On August 20, 2020, Defendant removed the action to federal court. *See* Notice of Removal, Docket No. 1.

In July 2022, Plaintiff filed for – and Defendant did not oppose – preliminary approval of a class settlement. *See* Motion for Preliminary Approval of Class and Representative Action Settlement, Docket No. 34. After filing suit and in preparation for the Motion for Preliminary Approval of Class and Representative Action Settlement, the parties engaged in substantial discovery and analysis of the underlying merits of Plaintiff's claims, potential damages, and possible certification. *Id.* at 3. Defendant produced documents on, *inter alia*, its employment policies and procedures related to the recording of time, meal periods, rest periods, expense reimbursements, overtime, attendance, Plaintiff's time records, Plaintiff's pay records including wage statements, and a sampling of data on class members' time records, meal periods, shifts, and wage statements. *Id.* Plaintiff's counsel then examined the records and engaged an expert to analyze the data, the results of which were used to produce a damages model for mediation. *Id.* The parties participated in mediation with attorney Lisa Klernan, who is a third-party mediator experienced in mediating wage and hour class actions. *Id.* at 4. Mediation entailed approximately ten hours of "extensive and informed" arms-length negotiations, and although the parties did not settle on the day of mediation, they continued settlement discussions after mediation and reached

a settlement (the "Settlement Agreement") in principle based on the mediator's proposal. *Id.* Both parties agree that the Settlement Agreement is reasonable, fair, and equitable to both sides. *Id.*

On July 11, 2022, the Court granted Plaintiff's Motion for Preliminary Approval of Class and Representative Action Settlement. *See* Docket No. 42. As part of this Order, the Court certified a class, for settlement purposes only, consisting of:

> [A]ll current and former non-exempt individuals who were employed by Defendant G2 Secure Staff, L.L.C. in California at any time from October 9, 2016 through the date the Court signs this Order (date of preliminary approval of the Settlement Agreement).

*Id.* at 3. The class period is October 9, 2016 through the date of preliminary approval. *Id.*

## II.  Discussion

### A. Terms of the Settlement

For purposes of settlement only, the parties agree to the certification of the following class: "[A]ll current and former non-exempt individuals who were employed by Defendant G2 Secure Staff, L.L.C. in California at any time from October 9, 2016 through the Preliminary Approval Date . . . of the Settlement." Declaration of Anthony J. Orshansky ("Orshansky Decl."), Docket No. 45, Ex. 1 ("Settlement") at ¶ 2.2. The class period is October 9, 2016 through the date of preliminary approval. *Id.*

Defendant has agreed to pay a non-reversionary gross settlement amount of $555,000 ("Gross Settlement"). Settlement at ¶ 2.16. Deducted from that Gross Settlement will be the following amounts:

> (a) *Settlement Administration Fees and Costs* – This includes disseminating notice of the settlement, calculating individual settlement payments, handling disputes regarding individual settlement payments, issuing all payments under the settlement, calculating and processing tax withholdings, and issuing pertinent tax forms. Settlement at ¶ 6.5.1. CPT Group, Inc., the third-party administrator for administering the terms of the settlement, has agreed to charge $40,000 in settlement administration costs.
>
> (b) *Class Representative Service Payment* – A service payment to the Class Representative not to exceed $7,500. Settlement at ¶ 6.2. Any amount of the requested service payment not awarded by the Court will be included in the distribution to the class members.
>
> (c) *Class Counsel's Attorneys' Fees and Costs* – Attorneys' fees in the amount of $185,000, which is 33⅓ percent of the Gross Settlement, and reimbursement of litigation costs of up to $15,000. Settlement at ¶ 6.3. Any amount of the requested attorneys' fees and costs not awarded by the Court will be included in the distribution to the class members.

>   (d) *PAGA Penalties* – The Settlement Agreement allocates $50,000 toward civil penalties pursuant to PAGA. Settlement at ¶ 6.4. Of that amount, 75 percent ($37,500) will be paid to the LWDA, pursuant to statute. The remaining amount will be allocated to class members.

The employer's share of payroll taxes on any portion of the settlement that is allocated as wages will be paid by Defendant in addition to the Gross Settlement. Settlement at ¶ 6.1. Subject to the Court's approval of the attorneys' fees and costs, payment to the LWDA, Settlement Administration Costs, and Plaintiff's Service Payment, the Net Settlement Amount ("NSA") will be distributed to all participating class members based on whether the settlement class member qualifies as a PAGA member in addition to being a class member. Motion at 5. Because the Gross Settlement is non-reversionary, one hundred percent of the NSA will be paid to participating class members without the need to submit a claim for payment. *Id.* at 2.

In exchange for the Gross Settlement, class members who do not opt out agree to release any and all known or unknown claims against Defendant during the Class Period, including claims under California wage law. Settlement ¶¶ 2.8, 2.23. All class members will release certain PAGA claims, as detailed in the Settlement Agreement at paragraph 2.23. Settlement ¶¶ 2.8, 2.23.

### B. Continued Certification of the Class for Settlement Purposes

The Court previously considered the appropriate Rule 23 factors in preliminarily certifying the class on July 6, 2022. *See* Docket No. 39 at 5-9. Nothing in the time since the preliminary certification of the class for settlement purposes suggests that the class should be decertified. The Court now makes final the certification (for settlement purposes) of that class for the reasons addressed in connection with the preliminary approval proceedings. *See* Docket No. 40; *see also* Docket No. 39 at 5-9.

### C. Notice

For a class judgment to bind an absent class member, Rule 23(e) requires that the absent class members receive adequate notice. *See* Fed. R. Civ. P. 23(e). Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980). Here, the notice process the Court ordered and the parties followed involved mailing notice to approximately 9,553 class members via First Class U.S. mail. *See* Declaration of Abel E. Morales ("Morales Decl."), Docket No. 43-2 at ¶ 8; *see also* Motion at 2. The notice was sent to class members' last known mailing address. *See* Morales

Decl. at ¶¶ 8-9. There were no objections to the settlement of the class claims and five opt-outs. *Id.* ¶¶ 10-11. The Court would thus find that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### D. The Merits of the Settlement

#### 1. *Legal Standards Governing Settlement*

Federal Rule of Civil Procedure Rule 23(e)(2) provides that the Court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i)   the costs, risks, and delay of trial and appeal;
>   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). A district court must in its approval

5

order "show not only that 'it has explored [the *Churchill*] factors comprehensively,' but also that the settlement is 'not[ ] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

Nevertheless, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned" (internal quotation marks omitted)); *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."). While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625. The Court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The settlement must stand or fall in its entirety." *Id.* The Court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

    2. *Fairness of the Settlement*

        a. <u>Presumption of Fairness</u>

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Orozco v. Ardent Companies, Inc.*, No. CV 18-2763-GW-(SSX), 2020 WL 10730050, at *5 (C.D. Cal. Feb. 3, 2020).

As the Court noted in its preliminary approval, the settlement was negotiated at arm's

length, and neither the process nor the result has any indications of collusion. The settlement was the result of approximately ten hours of mediation, as well as subsequent conferrals between the parties and the mediator in the weeks following. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." (internal quotation omitted)). The Court would also note that Plaintiff undertook substantial discovery before negotiating a settlement, indicating effort in litigating the matter and a well-researched position going into settlement negotiations. *See* Motion at 10. This included obtaining records from Defendant and hiring an expert to analyze the data. *Id.*

Given the significant amount of discovery and the use of a mediator as discussed above, the Court would afford the settlement the presumption of fairness.

### b. Whether the Settlement Is Fair, Adequate, and Reasonable

The Court now turns to the requisite factors pursuant to Federal Rule of Civil Procedure 23(e), addressing each in turn below.

*Strength of the Case*. There were no merits proceedings in this case, but as noted above, the Plaintiff undertook a great deal of discovery. Nevertheless, there were barriers, both legal and factual, to Plaintiff's recovery that made settlement unclear. *See G. F. v. Contra Costa Cnty.*, No. 13-CV-03667-MEJ, 2015 WL 7571789, at *8 (N.D. Cal. Nov. 25, 2015) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."). Plaintiff recognizes these barriers, including possible arbitration agreements with class action waivers, the difficulty of proving that class members' jobs required the use of their phones, the extent to which Plaintiff's overtime claim is subject to the collective bargaining agreement exemption pursuant to Labor Code § 514, possible employee waiver of meal breaks, and the Court's discretion over the amount of the PAGA penalties. *See* Motion at 6-9. These arguments have been previewed in the motions in this case, and these issues could threaten Plaintiff's ability to maintain this case and his class claims. These challenges weigh in favor of approving the settlement.

*Risk, Expense, Complexity, and Likely Duration of Further Litigation*. "Difficulties and risks of litigating weigh in favor of approving a class settlement." *G. F.*, 2015 WL 7571789, at *8; *see also Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW-(JEMx), 2020 WL 10055593, at *4 (C.D. Cal. June 22, 2020) ("The expense and possible duration of the litigation

7

should be considered in evaluating the reasonableness of a settlement."). Here, it is clear that the lawsuit could continue for years in both this Court and potentially on appeal. Such a lengthy process would increase the costs of litigation, and attorneys' fees would take up a substantial portion of any recovery amount. Thus, this factor weighs in favor of approving the settlement.

*Risk of Maintaining a Class Action Status Throughout Trial*. Although the Court believes its decision to preliminarily certify the class was justified, there is "no guarantee that further developments in the case would not have caused consideration anew of that conclusion." *Elkies*, 2020 WL 10055593, at *5. But in the absence of any indicia that the class may be decertified, the Court would conclude that this factor is neutral at worst.

*Amount Offered in the Settlement*. According to the Settlement Administrator, the NSA is $270,000. *See* Morales Decl. at ¶ 13. Based on the Settlement Administrator's estimated settlement calculations, the 9,548 participating class members will recover an estimated average total gross payment – including their PAGA payment – of $28.26. Morales Decl. at ¶ 15. Although the award amount is lower than what class members may have been able to obtain had the case proceeded to trial, the award reflects the truncated litigation timeframe, the risks posed by additional litigation, and any delay that may have been encountered while obtaining payments after a trial. And, again, there have been no objections to the settlement and only five opt-outs. *Id.* ¶¶ 10-11. As a result, the Court believes that the amount offered in settlement reflects a fair compromise and supports settlement.

*Extent of Discovery Completed and the Stage of the Proceedings*. As discussed above, the parties reached settlement in this case after significant discovery. Thus, this factor weighs in favor of finding the settlement fair.

*Experience and Views of Counsel*. "In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Elkies*, 2020 WL 10055593, at *6. Here, class counsel – who are experienced in this type and scale – consider the settlement to be fair, adequate, and reasonable, and this factor weighs in favor of granting approval.

*Presence of a Governmental Participant*. Because no governmental entity participated in the settlement of the case, this factor is neutral. *See id.*

*Reaction of the Members of the Class to the Proposed Settlement*. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that

8

the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, no individuals objected to the settlement of the class claims, and only five opted out. *See* Morales Decl. ¶¶ 10-11. Therefore, this factor strongly supports approving the settlement.

*Adequate Representation of the Class (Rule 23(e)(2)(A))*. The Court would conclude that both Plaintiff and his counsel fought this litigation vigorously through the pleadings, the amount of discovery undertaken, the extensive mediation and settlement negotiations, and the motions for preliminary (and now final) approval of the Class Settlement. The Court would thus conclude, as it did in its Order granting preliminary approval, that Plaintiff and his counsel have adequately represented the class and its interests. This factor weighs in favor of granting final approval.

*Arm's Length Negotiation*. As discussed above, the Court is persuaded that the proposed settlement was negotiated at arm's length and that neither the process nor the result have any indications of collusion. The settlement was the result of approximately ten hours of mediation, as well as subsequent conferrals between the parties and the mediator in the weeks following. *See* Motion at 10. Plaintiff also undertook substantial discovery before negotiating a settlement, which included serving Defendant with discovery requests, obtaining payroll information for a random sample of class members, examining the records, and engaging an expert to analyze the data, the results of which were used to produce a damages model for mediation. *See id.* Moreover, there is no reason for the Court to suspect that the instant settlement was a product of collusion, particularly because the Settlement Agreement provides for a non-reversionary payment. Thus, the Court would find this factor satisfied.

*Adequate Relief for the Class (Rule 23(e)(2)(C))*. The Court has already considered above "the costs, risks, and delay of trial and appeal." "With respect to 'the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims,'" the Class members will not need to submit a claim form and will automatically be mailed a check. *Elkies*, 2020 WL 10055593, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(C)); *see also* Morales Decl., Ex. A at 8 ("You do not need to do anything to participate in the proposed Settlement. If the proposed Settlement is finally approved, the Settlement Administrator will mail out settlement payments pursuant to the schedule provided in the Settlement Agreement."). The Settlement is also non-reversionary, with uncashed checks being sent to the California Secretary of State Unclaimed Property Fund. Settlement at 7.4.3. Moreover, the terms of the proposed award of

9

attorneys' fees will be discussed further in connection with the Court's consideration of the attorneys' fees motion, *infra*. For purposes of settlement approval, however, there is nothing glaring in the settlement insofar as attorneys' fees are concerned that causes the Court to pause in giving its approval. There is nothing here to trouble the Court in connection with a determination that the settlement is fair, adequate, and reasonable.

*Equitable Treatment of Class Members (Rule 23(e)(2)(D))*. As discussed in the order granting preliminary approval, *see* Docket Nos. 39, 42, the Settlement Payment will be divided among the participating class members to determine each participating class member's individual share. Settlement ¶ 6.6.4. A settlement generally "does not improperly provide preferential treatment to any class member" when the recovery for each class member is "based on the specific harms that class member experienced." *Sherman v. CLP Res., Inc.*, No. CV 12-11037-GW-(PLAx), 2020 WL 2790098, at *10 (C.D. Cal. Jan. 30, 2020). The only plaintiff who will be treated differently is the named Plaintiff receiving the service payment, which the Court has previously found to be proper under Federal Rule of Civil Procedure Rule 23(e). *See* Docket Nos. 39, 42. Thus, this factor weighs in favor of granting final approval.

### E. Attorneys' Fees, Costs, and Service Awards

Plaintiff's counsel moves for approval of their request for $185,000 in attorneys' fees and costs, representing 33⅓ percent of the Gross Settlement, reimbursement of $12,550.96 in costs, and a class representative service payment of $7,500 to Plaintiff.

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

In awarding fees in connection with a common fund, courts generally use either a percentage method or a "lodestar" method, but in the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant. *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d

at 272.  The advantages of using the percentage method have been described thoroughly by other courts, and need not be repeated here.  *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).  The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund.  *See Paul, Johnson*, 886 F.2d at 271-72.

There is no question that Plaintiff's counsel should benefit from the common-fund doctrine here.[1]  Counsel took up a case, on contingency, thereby sacrificing time that could have been spent on other matters.  *See* Orshansky Decl. ¶ 20.  Counsel achieved a respectable monetary result in this case, with no possibility of reversion to Defendant.  Certainly, the result achieved for the class is deserving of some measure of reward.

However, Plaintiff's counsel requests a fee award above the Ninth Circuit benchmark of 25%.  *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*).  This is a benchmark that this Court, in particular, almost-always adheres to in cases where there is little active litigation pre-settlement.  Specifically, Counsel seeks a 33.3% percentage-of-recovery fee, amounting to $185,000.  Counsel reports a lodestar figure of $142,150 (reflecting 197.4 hours of work on the case, at rates that the Court would find on the somewhat-high side) for purposes of a "cross-check," meaning that a positive 1.3 multiplier would be necessary in order to reach the requested $185,000 fee award.  *See* Orshansky Decl. ¶ 23.  This speaks to the value Plaintiff and his counsel were able to extract from this case without needing to engage in lengthy and costly litigation.  Moreover, the Court has received no objections from the class, including with respect to this fee request, the anticipation of which was revealed in the class notice.  *See* Morales Decl., Ex. 1 at 9.

However, this Court typically reserves above-benchmark fee awards for cases involving more litigation than was involved here or that is otherwise extraordinary in some fashion.  Neither of those considerations apply here, to what appears to have been a fairly run-of-the-mill wage-and-hour case.  The Court would therefore be inclined to award Plaintiff's counsel the lodestar figure of $142,150 which is above the benchmark 25%, *i.e.* $137,500.

---

[1] The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.

Counsel also requests a costs/expenses award in the amount of $12,550.96. *See* Orshansky Decl. ¶¶ 32-33. There does not appear to be any reason the requested costs should not be reimbursed. The compensable expenses represent mail, research, service, filing, and mediation expenses. *See id.* ¶ 32, Ex. 2. Such expenses are reasonably incurred in class litigation and represent services that are, in this Court's experience, customarily billed to clients. And, again, the Court received no objections. Moreover, the Settlement Agreement provided for $15,000 in costs. The Court would conclude that the costs are reasonable, particularly because they are *less* than provided for in the Settlement Agreement, which the Court already found reasonable in its preliminary approval. *See* Docket Nos. 39, 40. The Court would therefore award the full $12,550.96 in costs/expenses requested.

Finally, the fee motion also asks for a service payment to Plaintiff in the amount of $7,500. *See* Orshansky Decl. ¶ 35. This $7,500 figure was disclosed in the notice sent out to the class, *see* Morales Decl., Ex. 1 at 9, and, again, there were no objections to the settlement (or to any of the proposed/requested disbursements from the settlement amount).

The decision whether to award an incentive payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g.*, *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458, 462 (9th Cir. 2000). The criteria courts may consider in determining whether to make an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (S.D. Cal. 1995).

Plaintiff took on his role in this action with an understanding of his duties, and the burden that would be imposed. *See* Declaration of Bryan A. Rodriguez in Support of Final Approval and Motion for Attorneys' Fees and Costs, and Class Representative Service Payment ("Rodriguez Decl."), Docket No. 46. He reports spending at least 35 hours participating in case-related activities, including: searching for, producing, and reviewing documents in his possession and reviewing documents Defendant produced; identifying potential witnesses; participating in meetings with his attorneys and providing them with information about his employment and Defendant's policies, practices, and procedures; and discussing and evaluating the terms of the settlement with his attorneys. *See id.* ¶ 11; *see also* Orshansky Decl. ¶¶ 42-43. In addition, there

is no doubt that Plaintiff faces a potential professional/reputational risk as the result of suing a former employer. *See* Rodriguez Decl. ¶ 17; *see also* Orshansky Decl. ¶ 37. Plaintiff also signed a general release, broader than the release governing other class members, in connection with the instant settlement, and conceivably could have been held to account for Defendant's costs and fees. *See* Rodriguez Decl. ¶¶ 14, 17.

As the Court noted in its preliminary approval, the service payment of $7,500 to Plaintiff as the class representative is reasonable and within the range of service awards commonly granted by courts – although the Court would note that such an amount is slightly higher than is awarded in a typical class representative arrangement. *See Pauley v. CF Ent.*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020) ("The range of acceptable enhancement payments is discretionary, but a $5,000 payment is presumptively reasonable." (internal quotation omitted)); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015) (awarding $5,000 to some class representatives and $10,000 to class representatives who were current employees during the litigation and faced retaliation), *aff'd*, 728 F. App'x 671 (9th Cir. 2018). However, the Court would conclude that a service payment is justified here, and would agree that $7,500 is a suitable amount, where Plaintiff is a single representative who brought this lawsuit on behalf of more than 9,000 other individuals.

In sum, the Court would grant the Motion for Attorneys' Fees and Costs, and Class Representative Service Payment, but with a reduction in the amount requested for attorneys' fees as set forth above.

### III. <u>Conclusion</u>

Based on the foregoing discussion, the Court would **GRANT**: (1) the Motion for Final Approval of Class and Representative Action Settlement, and (2) the Motion for Attorneys' Fees, Costs, and Class Representative Service Payment and so award $142,150 in attorneys' fees, $12,550.96 in costs, and an incentive award of $7,500 to the named Plaintiff.